IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Leonard Truck & Trailer Inc.**, 12800 Leonard Pkwy. North Jackson, Ohio 44451,       Plaintiff, v. **Leonard Buildings and Truck Accessories dba Leonard USA and dba leonardusa.com,** 580 N Andy Griffith Parkway Mt. Airy, North Carolina 27030, and, **Leonard Aluminum Utility Buildings, LLC**, 160 Mine Lake Court, Ste. 200 Raleigh, North Carolina 27615-6417,       Defendants. | Case No. 4:21-cv-02362-SL Judge Sara Lioi **_FIRST AMENDED_** **_COMPLAINT FOR_** **_TRADEMARK INFRINGEMENT_** **_AND UNFAIR COMPETITION_** *(Jury Demand Endorsed Hereon)* |

NOW COMES the Plaintiff, *Leonard Truck & Trailer Inc.*, and for its Complaint against the Defendants alleges and avers as follows:

## THE PARTIES

1. The Plaintiff is a corporation organized under the laws of Ohio and has its principal place of business in North Jackson, Ohio, which is in Mahoning County.

2. The Defendant, Leonard Buildings and Truck Accessories, dba Leonard USA and dba leonardusa.com, upon information and belief, is a business entity of unknown type that has

its principal place of business in Mt. Airy, North Carolina, but has "over 57 locations in North Carolina, South Carolina, Virginia, West Virginia, and Tennessee." See, https://www.leonardusa.com/mount-airy-nc.

3. The Defendant, Leonard Aluminum Utility Buildings, Inc., upon information and belief, is a corporation organized under the laws of North Carolina and has its registered agent located in Raleigh, North Carolina. Leonard Aluminum Utility Buildings, Inc. is the owner of a registered trademark for "Leonard Buildings & Truck Accessories®." Date of first use of said trademark was Feb. 1, 1993. See, https://tmsearch.uspto.gov/bin/showfield?f=doc&state=4810:28j9u1.2.1.

## JURISDICTION AND VENUE

4. This is an action for trademark infringement. The trademark claims arise under the trademark laws, 15 USC § 1125(a) *et seq*. This Court has subject matter jurisdiction in this matter because this action arises under the laws of the United States.

5. This Court has personal jurisdiction over the Defendants by virtue of their sale of products, transaction of business, and solicitation of business within the State of Ohio, within this judicial district and elsewhere. The Defendants here have sales points in several states and customers from Ohio and other states.

6. In addressing the question of personal jurisdiction in trademark cases, the Sixth Circuit has applied the following three part test for federal due process: 1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; 2) the cause of action must arise from the defendant's

activities; and, 3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.*, 11-6048 (6th Cir. Aug. 23, 2012*).*

7. In this case, the Defendants have caused a consequence in the State of Ohio. Namely, customers of the Defendants have attempted to make returns to the Plaintiff of trailers, parts, and components that were purchased from Defendants. Defendants' customers have also attempted to get service from Plaintiff. This is actual confusion in its clearest form.

8. Further, the Plaintiff's case for trademark infringement here involves the question of likelihood of confusion. The Sixth Circuit Court of Appeals has set out eight factors that are relevant to make a showing that the infringer's mark will create a likelihood of confusion with the senior mark owner's goods or services: 1) strength of the plaintiff's mark; 2) relatedness of the goods or services; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) likely degree of purchaser care; 7) defendant's intent in selecting the mark; and, 8) likelihood of expansion of the product lines. *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Ohio*, 849 F.2d 1012 (6th Cir. 1988).

9. In this case, the Plaintiff's cause of action arose from the Defendant's activities. Actual confusion manifested itself several times where Defendants' customers contact the Plaintiff mistakenly believing that they are contacting the Defendants.

10. Finally, it is reasonable for the Court to exercise jurisdiction here since the acts of the Defendants have had a substantial connection with Ohio, and particularly in Mahoning County. The Plaintiff is in Mahoning County and members of the public have been confused

thinking that the Defendants are the Plaintiff. This is especially problematic and gives rise to this case since Plaintiff enjoys a registered trademark for "Leonard Trailers®," for trailers, and Defendants' customers are actually confused between Defendants and Plaintiff concerning Defendants' sale of trailers as "Leonard Trailers."

11. Further, Ohio's Long-Arm Statute, RC § 2307.382(A)(1), provides that "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state." In this case, the Defendants transact business in this state. The Defendants offer for sale infringing product in this district and elsewhere via their internet website, www.leonardusa.com, which also constitutes acts of trademark infringement by offering "Leonard Trailers" for sale to customers in Ohio and elsewhere.

12. Ohio's Long-Arm Statute, RC § 2307.382(A)(2), provides that "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (2) Contracting to supply services or goods in this state." In this case, the Defendants contract to supply goods in this state. The Defendant offers for sale infringing product in this district and elsewhere through their infringing website, www.leonardusa.com.

13. Again, the Defendants sell and offer for sale products over their own website at: http://www.leonardusa.com, which website is an active rather than a passive website, meaning, it permits Ohio users to place orders, to store personal account information, to register a username and password (login), to access customer service, and to ship products to different states, including Ohio. Websites with similar features have been found to satisfy

the 'purposeful availment' requirement of the "minimum contacts" analysis satisfying due process. *See, e.g., Solar X Eyewear, LLC v. Bowyer*, 2011 WL 3418306 (N.D. Ohio Aug. 4, 2011); *Wood v. 1-800-Got-Junk?, LLC*, 2007 WL 895008 (S.D. Ohio March 22, 2007); *V Secret Catalogue v. Zdrok*, 2003 WL 22136303 (S.D. Ohio Aug. 29, 2003); *Bath and Body Works, Inc. v. Wal-Mart Stores, Inc.*, 2000 WL 1810478 (S.D. Ohio Sept. 12, 2000).

14. Venue is proper in the Northern District of Ohio because a substantial part of the events giving rise to the claims occurred in this judicial district, the Defendant is subject to personal jurisdiction in this district, and infringement occurred within this judicial district.

## STATEMENT OF FACTS

15. Leonard Truck & Trailer, Inc. ("LT&T") began in 1963 in North Jackson, Ohio with modest backyard beginnings when Stan and Peg Leonard began dealing with horses and a few horse trailer manufacturers. The company experienced moderate growth over the next twenty-three years, with the addition of trailer manufacturers and inventory. In 1986, Stan and Peg's son, Clint, joined Leonard Truck and Trailer as a sales representative.

16. During the next several years, LT&T continued to grow with the addition of many new trailer manufacturers and by creating what would become the largest parts and after-market trailer sales department in the Ohio, Pennsylvania, and West Virginia areas. It was at this time that Clint (who is now the company President) began expanding the LT&T product line by offering living quarter trailers, enclosed car and cargo trailers, dump trailers, utility and construction trailers, as well as heavy equipment trailers.

17. In February of 1999, LT&T moved to a new location on I-76 at Bailey Rd. (Exit #57), still in North Jackson, Ohio. The new location, within an hour drive of Cleveland, Canton, and

Pittsburgh, has allowed the company's rapid growth to continue. The convenient location features a 24,000 square foot facility, including an 11,000 square foot service center that features four 100' drive through bays, plus an extensive parts department, giving LT&T the capacity to repair any trailer-related problem or to customize trailers in about any way.

18. The present LT&T megastore, which is the present, large facility, allows for a greater selection of in stock trailers, an aftermarket display area in an indoor showroom, a comprehensive trailer parts and service department, plus a custom vinyl graphics department.

19. On October 17, 2017, a federal trademark registered on the principal register for "Leonard Trailers" as U.S. Trademark Registration No. 5,309,871 (hereinafter the '871 mark). <u>(A true and accurate copy of the U.S.P.T.O. TESS system registration information is attached to and incorporated herein by reference as "Exhibit 1.")</u>

20. All rights to the '871 mark, including but not limited to, the right to recover for infringement thereunder, are owned by Plaintiff.

21. The Plaintiff has widely and continuously promoted and sold Leonard Trailers® products. The Plaintiff has used the '871 mark consistent with its U.S.P.T.O. classification for goods and services in the classes of: retail store and online retail store services featuring horse trailers, livestock trailers, ATV trailers, snowmobile trailers, car trailers, dump beds, dump inserts, dump trailers, enclosed and open trailers, machinery, motor homes, motorcycle trailers, travel trailers, street bikes, semi-trailers, truck beds, tow dollies, toy haulers, trucks, utility trailers and utility terrain vehicles.

22. The Plaintiff has a first use in commerce date of "Leonard Trailers" as of Jan. 1, 1963.

23. To date, the Plaintiff has invested considerable money in marketing and advertising.

24. The Defendants have been and are currently making, using, offering for sale, marketing, and selling goods and services that infringe upon the Plaintiff's '871 mark.

25. The Defendants have been using "Leonard Trailers" in connection with marketing their goods and services over their website, www.leonardusa.com. (See a true and accurate copy of a screenshot from www.leonardusa.com attached to and incorporated herein by reference as "Exhibit 2," which shows trademark infringement.)

26. The Defendants have also placed meta data into the code behind their website, www.leonardusa.com, which includes direct trademark infringement of "Leonard trailers." (See a true and accurate copy of source code behind leonardusa.com demonstrating infringement attached to and incorporated herein by reference as "Exhibit 3.")

27. Plaintiff first received actual or constructive notice of the alleged infringement, that is, that the Defendants were using "Leonard Trailer" as a brand identifier during the year 2020 when Plaintiff began to receive online and telephone complaints where Defendants' customers were mistaking the Plaintiff as the Defendants.  It was this actual confusion that alerted the Plaintiff that the Defendants were using "Leonard Trailers."  Admittedly, Plaintiff knew of the mere existence of the Defendants many years ago but only knew them as "Leonard Buildings and Truck," and never had any reason to look into their business any further.  To be clear, Plaintiff does not allege in this lawsuit that "Leonard Buildings and Truck" is an infringement of the Plaintiff's registered trademark.  Rather, Plaintiff specifically alleges in this case that the infringement is the Defendants' use of "Leonard Trailer," [1] which Plaintiff only recently became aware of.

---

[1] See, (Complaint at CM/ECF Doc. # 1-2, at Pg. 2 of 4).

Plaintiff's Complaint for Trademark Infringement and Unfair Competition - 7

28. Beyond the infringement identified, Plaintiff needs discovery to ascertain all products, SKU's, goods, services, and marketing, which further constitute infringement.

29. The activities of Defendants have injured and threaten future injury to the Plaintiff. More specifically, the Defendants' activities have diminished the Plaintiff's goodwill and caused the Plaintiff to lose sales that it otherwise would have made but for the sales of the Defendants.

30. The Defendants are not authorized in any way to sell their infringing products or to use the Plaintiff's trademark.

31. Defendants' infringement is a colorable imitation and actual imitation of Plaintiff's famous "Leonard Trailers" mark and causes confusion in the marketplace.

32. The Plaintiff is entitled to an award of damages against Defendants for trademark infringement.

### **CLAIM NO. 1**
*(Federal Trademark Infringement; Unfair Competition*
*15 U.S.C. § 1125(a); §43(a) of the Lanham Act )*

33. The Plaintiff hereby incorporates by reference each statement, whether written above or below, as if each is fully re-written herein.

34. The Defendants have used, and are using, the Plaintiff's '871 mark without any authorization from the Plaintiff to market and sell their infringing products and services in such a fashion and design as to imitate, counterfeit, copy, and reproduce Plaintiff's mark.

35. The Defendants' acts are done for the purpose of exploiting and trading on the substantial goodwill and reputation of Plaintiff as symbolized by the Leonard trailers® mark. Such

intentional acts on the part of Defendants have damaged Plaintiff's goodwill as symbolized, causing Plaintiff immediate and irreparable harm and damage.

36. The Defendants' conduct has caused confusion, mistake, and deception, and is likely to continue to cause confusion, mistake, and deception, and has infringed upon the Plaintiff's exclusive rights in its trademark.

37. Upon belief, the Defendants had actual knowledge of Plaintiff's exclusive rights in the Leonard Trailers® mark and willfully and deliberately infringed Plaintiff's rights. The parties are competitors in the same industry.

38. The Defendants' acts of trademark infringement occurred in connection with the same or similar goods and services offered for sale by Plaintiff and is therefore likely to cause the consuming public to mistakenly believe that the Defendants' products originate from, are sponsored by, or are associated with, Plaintiff, constituting a false designation of origin or false or misleading description or representation of fact, and are also likely to cause the mark in question to lose its significance as an indicator of origin, in violation of 15 U.S.C. § 1125(a).

39. The activities of Defendants have caused a likelihood of confusion, and in fact, Plaintiff maintains evidence of actual confusion.

40. The Defendants' actions constitute trademark infringement, unfair competition, in violation of Plaintiff's rights under 15 U.S.C. § 1125(a).

**PRAYER FOR RELIEF / REQUEST FOR REMEDIES**

WHEREFORE, the Plaintiff prays that this Court enter an Order comprising:

A) A preliminary and permanent injunction enjoining the Defendants from making, using, or selling any product or services that infringes upon the '871 mark;

B) An accounting for damages resulting from Defendants' trademark infringement and the trebling of such damages because of the knowing, willful, and wanton nature of the Defendants conduct;

C) An assessment of interest on the damages so computed;

D) An award of attorney's fees and costs in this action;

E) Judgment against Defendants indemnifying the Plaintiff from any claims brought against the Plaintiff for negligence, debts, malpractice, product liability, or other breaches of any duty owed by the Defendants to any person who was confused as to an association between the Plaintiff and Defendants as alleged in this Complaint;

F) Requiring Defendants to account to the Plaintiff for all sales and purchases that have occurred to date and requiring the Defendants to disgorge all profits derived by Defendants for selling infringing product.

G) Requiring Defendants to provide full disclosure of all information relating to its supplier or suppliers of infringing product;

H) Requiring Defendants to provide the location of all manufacturing equipment, including but not limited to, molds used to manufacture infringing product;

I) Requiring Defendants to destroy all manufacturing equipment used to manufacture infringing product or to deliver said equipment to the Plaintiff;

J) Ordering a product recall of infringing product for destruction;

K) Requiring Defendants to file with this Court and serve on the Plaintiff within thirty (30) days of this Court's order a report setting forth the way they complied with the order;

L) Requiring Defendants to provide to Plaintiff all sales records, including but not limited to, email, mail, and advertising lists;

M) Damages according to each cause of action herein;

N) Prejudgment interest;

O) An injunction against Defendants under 15 U.S.C. § 116(a) for infringing the Plaintiff's trademark;

P) An award of damages to the Plaintiff for all damages sustained by Plaintiff including the Defendants' profits, and the costs of the action pursuant to 15 U.S.C. § 1117(a).

Q) An order against Defendants to destroy all things related to their infringing articles bearing a colorable imitation of the Plaintiff's mark pursuant to 15 U.S.C. § 1118; and

R) Any such other relief in law or equity that this honorable Court deems just.

### JURY DEMAND

WHEREFORE, the Plaintiff requests a trial by jury on all issues so triable by the maximum number of jurors permitted by law.

Most Respectfully Submitted,

*s/ David A. Welling*
**DAVID A. WELLING (Ohio # 0075934)**
CHOKEN | WELLING LLP
3020 W. Market St.
Akron, Ohio 44333
Tel.    (330) 865-4949
Fax    (330) 865-3777
davidw@choken-welling.com

*Counsel for the Plaintiff*

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing was served on all counsel via the Court's CM/ECF system on the date electronically time-stamped above.

*s/ David A. Welling*
**DAVID A. WELLING (Ohio # 0075934)**

*Counsel for the Plaintiff*